UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRET M. LAMPERES, | ) | Case No. 21-10516-CDP |
| SSN: XXX-XX-5633 | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| MELISSA KITOWSKI AND MICHAEL KITOWSKI, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Proc. No. |
| vs. | ) | |
| | ) | |
| BRET M. LAMPERES, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT OBJECTING TO DISCHARGEABILITY
OF DEBT PURSUANT TO 11 U.S.C §§ 523(a)(2), (4) AND (6)**

Plaintiffs Melissa Kitowski and Michael Kitowski, by and through their undersigned counsel, and for their Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2), (4) and (6), states as follows:

**PARTIES, JURISDICTION, & VENUE**

1. Debtor Bret M. Lamperes ("Defendant" or "Debtor") filed a Voluntary Petition for relief (the "Petition") under Chapter 7 of the U.S. Bankruptcy Code on February 1, 2021 ("the Petition Date"), commencing the above-captioned case.

2. Debtor is an individual who currently resides at 748 Mountain Avenue, Berthoud, Colorado, 80513.

3. Joli A. Lofstedt is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Trustee").

4. Plaintiffs Melissa Kitowski and Michael Kitowski (the "Plaintiffs") are married individuals who currently resides at 141751 East Kenyon Avenue, Aurora, Colorado, 80014.

5. This adversary proceeding is commenced pursuant to Rule 7001(1) and 7001(4) of

the Federal Rules of Bankruptcy Procedure.

6. This Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1331 and 1334(b) because this proceeding arises under the Bankruptcy Code and arises in and is related to the Chapter 7 case filed by the Defendant.

7. This a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A), (I) and (J).

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this Adversary Proceeding arises under and in connection with a case under Title 11 which is pending in this District.

## GENERAL ALLEGATIONS

9. Debtor is a member of a business entity known as Investments of Windsor, LLC ("Investments of Windsor"), a delinquent Colorado limited liability company with, pursuant its recordings with the Colorado Secretary of State, maintains its principal office address at P.O. Box 1304, Berthoud, Colorado, 80513. Pursuant to its recordings with the Colorado Secretary of State, the Debtor is the registered agent of Investments of Windsor.

10. Debtor's involvement with Investments of Windsor was not disclosed on the Debtor's Petition.

11. Upon information and belief, the Debtor, along with a business partner by the name of Joe Shrader, are the sole members of Investments of Windsor.

12. On or about May 31, 2018, Plaintiffs entered into a Contract to Buy and Sell Real Estate with Investments of Windsor (the "Durum Contract"). The contract was for the purchase of property located at 739 Durum Street, Unit C, Windsor, Colorado, 80440 (the "Durum Property").

13. Debtor signed the Durum Contract on behalf of Investments of Windsor.

14. As part of the agreement, the Plaintiffs paid $90,000 in earnest money to Investments of Windsor (the "Earnest Money Payment").

15. The Durum Contract identified Keller Williams Realty Partners as the Seller's Agent, and Debtor signed the contract as the individual broker from Keller Williams Realty Partners.

16. By Amendment dated September 20, 2018, the Durum Contract was amended to provide that Plaintiffs' $90,000 in earnest money could be used for construction, building operations, and other related purposes (the "Amendment").

17. In the Amendment, Mr. Lamperes disclosed that he was a principal of Investments of Windsor and also that he was operating as seller's broker as a licensed real estate broker.

18. The Amendment also provided the right for Plaintiffs to terminate the Durum Contract and to demand return of the Earnest Money if a Certificate of Occupancy for the Durum Property was not provided within one year, by September 20, 2019.

19. During the course of the one year period it became clear that the Durum Property would not be completed by September 20, 2019.

20. As a way to resolve that problem, the Debtor represented to Plaintiffs that the Plaintiffs could instead purchase a separate property located nearby and apply the already-provided earnest money towards that other property.

21. Thus, the Debtor presented a contract dated August 17, 2019 (the "Cedar Contract") to Plaintiffs for purchase of a separate property located at 610 Cedar Street, Suite A, Windsor, CO 80550 (the "Cedar Property") from Loveland Investments, identifying the Debtor, through Keller Williams 1st Realty, as the seller's broker.

22. On August 19, 2019, in an agreement titled "Earnest Money Release," Plaintiffs agreed to transfer their $90,000 in earnest money from the Durum Property to and for the purchase of the Cedar Property.

23. At that time, the Cedar Property was owned and was being sold by Loveland Investments.

24. Plaintiffs provided a Notice to Terminate dated August 19, 2019 to Investments of Windsor and the Debtor.

25. Despite repeated demand, Plaintiffs have not received a return of the $90,000 in earnest money from the Debtor, nor have either the Cedar Property or the Durum Property been delivered to the Plaintiffs.

26. As a result of the Debtor's actions and omissions in connection with these matters, the Colorado Real Estate Commission (the "Commission") commenced an investigation of, and disciplinary action against, the Debtor.

27. Following the investigation, Debtor entered into a stipulation with the Commission.

28. As part of the stipulation, the Debtor admitted to numerous violations of Colorado law and Commission rules and regulations, including as set forth below:

§12-10-217(1)(a) C.R.S., Debtor knowingly made a misrepresentation or used any false or

misleading advertising;

§12-10-217(l)(b) C.R.S., Debtor made a promise which influenced, persuaded, or induced another person to detrimentally rely on such promise, when the Debtor could not or did not intend to keep the promise;

§12-10-2t 7(l)(g), C.R.S., Debtor while acting in the employ of another broker, failed to place as soon as practicable after receipt, in the custody of the employing broker deposit money or other money entrusted to the employee by a person dealing with the employee as a representative of that licensed-broker employer;

§12-10-217(1)(h), C.R.S., Debtor failed to account for or to remit, within a reasonable time, any monies coming into his/her possession that belong to others, whether acting as a real estate brokers or otherwise;

§12-10-217(1)(i), C.R.S., Debtor converted and/or diverted funds of others, without proper authorization, or commingled funds of others with his/her own funds, or failed to keep funds of others in an escrow or trust account;

§12-10-217(1)(m), C.R.S., Debtor disregarded or violated any provision of the Real Estate Broker License Law or Commission rule or regulation, or provision of this part 2 or part 4 of this article;

§12-10-407(1), C.R.S., Debtor engaged as a transaction broker cannot act as an agent for one party;

Commission Rule E-l(e), Debtor commingled personal funds with money belonging to others.

Commission Ruic E-l(g), Debtor diverted and/or converted funds, which is prohibited.

Commission Rule E-l(m), Debtor failed properly account for earnest money or disperse earnest money received for a construction purpose;

Commission Rule E-l(o), Debtor failed to supervise or maintain, at the broker's licensed place of business, a record keeping system, subject to subsection (7) of this rule, for each required escrow or trust account;

Commission Rule E-l(p), Debtor diverted and/or converted funds, which is prohibited;

Commission Rule E-25, Debtor failed to disclose a conflict of interest during the course of the transaction as required;

12-10-217(1)(q), C.R.S., Debtor has demonstrated unworthiness or incompetency to act as

a real estate broker by conducting business in such a manner as to endanger the interest of the public;

§12-10-217(1)(t), C.R.S., Debtor claimed, arranged for, or took any secret or undisclosed amount of compensation, commission, or profit or failed to reveal to the licensee's principal or employer the full amount of such compensation, commission, or profit in connection with any acts for which a license is required under this part 2:

§12-10-217(1)(w), C.R.S., Debtor engaged in conduct which constitutes dishonest dealing; Commission Rule E-15, Debtor improperly retained whole or part of an earnest money deposit;

29. As a result of the Commission investigation, the Debtor agreed to a public censure and to pay a fine in the amount of $50,000.

30. As of September 2, 2020, the Commission permanently revoked the Debtor's real estate license.

31. On September 28, 2020, the Plaintiffs filed suit in Weld County, Colorado asserting claims against the Debtor in his personal capacity, as well as various claims against Investments of Windsor, Loveland Investments, Keller Williams Realty Partners, and Keller Williams 1st Realty Assoc., Inc., for their role in the above-described series of events (the "State Court Lawsuit").

32. In relevant part, the State Court Lawsuit asserted claims against the Debtor for negligence, civil theft, and violation of C.R.S. § 38-22-127.

33. Debtor filed his Chapter 7 Petition on February 1, 2021, triggering the automatic stay provision of 11 USCS § 362.

34. On March 2nd, 2021, the District Attorney's Office for the Nineteenth Judicial District brought multiple felony charges against the Debtor in case number 2021CR000483, including the following charges:

    a) Violation of C.R.S. § 18-4-401(1)(b) and (2)(i) (Theft - Class 3 felony);

    b) Violation of C.R.S. § 18-5-309(1)(b)(II) (Money laundering - Class 3 felony;

    c) Violation of C.R.S. § 39-21-118 (4) (Filing a false tax return - Class 5 felony); and

    d) Violation of C.R.S. § 39-21-118 (1) (Tax evasion - Class 5 felony).

35. That same day, an arrest warrant was issued for the arrest of the Debtor. Bond has been set in the amount of $50,000.

## COUNT I:
## NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)

36. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

37. The Debtor is obligated to Plaintiffs for a full refund of the Earnest Money Payment and interest, pursuant to the agreement between the parties.

38. The Debtor through false pretenses, false representations or commission of actual fraud, induced the Plaintiffs to enter into binding legal agreements relating to the proposed purchase of the Durum Property and the Cedar Property and caused the Plaintiffs to rely to their detriment on such false pretense, false representations and/or actual fraud.

39. Such false pretenses, false representations and/or actual fraud include but are not limited to the statement that the Defendant: (a) could and would deliver the Durum Property to the Plaintiffs within the time frame contemplated under the Durum Contract; (b) that the Cedar Property could and would be delivered to the Plaintiffs; (c) that the Earnest Money Payment would be returned to the Plaintiffs in the event that a Certificate of Occupancy was not provided by September 20, 2019; (d) that the Earnest Money Payment would only be used for the authorized purposes; (e) all other statements, actions, and omissions by the Defendant which created the impression that he would abide by all applicable laws, rules, regulations, contractual agreements, and ethical duties governing his transactions with the Plaintiffs; (f) the Defendant had the right to and would sell the Cedar Property to the Plaintiffs, (g) that the Defendant would hold the Earnest Money Payment in trust; and (g) the Defendant would return the Earnest Money Payment.

40. The Debtor has improperly maintained, utilized and refused to turnover the Earnest Money Payment.

41. As a direct and proximate result of the Debtor's conduct, Plaintiffs have been damaged and continue to suffer on-going damage.

42. Based on the foregoing, the amount of the Earnest Money Payment which the Debtor owes to the Plaintiffs is a debt obtained by false pretenses, a false representation, and/or actual fraud, other than a statement respecting the debtor's or an insider's financial condition,

within the meaning of 11 U.S.C. § 523(a)(2)(A).

WHEREFORE Plaintiffs respectfully request that the Court enter judgment in their favor and against the Debtor in the amount equal to the Earnest Money Payment and deny a discharge of the claim equal to Earnest Money Payment plus accruing interest and fees and costs, or such other amounts as determined at trial, plus attorney's fees and costs, pursuant to 11 U.S.C. § 523(a)(2).

## COUNT II:
## NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(4)

43. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

44. The Debtor received and maintained the Earnest Money Payment, which proceeds were the property of the Plaintiffs and was to be held in trust for the benefit of Plaintiffs until it was earned by the Debtor through the honoring of the Durum Contract or the Cedar Contract.

45. The Debtor has failed to return the Earnest Money Payment to the Plaintiffs.

46. The Debtor has retained and used the Earnest Money Payment for Debtor's personal gain.

47. As a direct and proximate result of Debtor's conduct, Plaintiffs have been damaged.

48. At all material times, the Debtor was acting act in a fiduciary capacity to Plaintiffs with respect to the Durum Property, the Cedar Property and the Earnest Money Payment.

49. The conduct of Debtor constitutes fraud, defalcation, embezzlement and/or larceny.

WHEREFORE Plaintiffs respectfully request that the Court enter judgment in their favor and against the Debtor in the amount equal to the Earnest Money Payment and deny a discharge of the claim equal to Earnest Money Payment plus accruing interest and fees and costs, or such other amounts as determined at trial, plus attorney's fees and costs, pursuant to 11 U.S.C. § 523(a)(4).

## COUNT III:
## NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)

50. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

51. The Debtor, with willful and malicious intent, failed and refused to honor the

Durum Contract.

52. The Debtor, with willful and malicious intent, failed and refused to honor the Cedar Contract.

53. The Debtor, with willful and malicious intent, failed and refused to honor the Earnest Money Release agreement.

54. The Debtor, with willful and malicious intent, failed and refused pay and intentionally diverted from Plaintiff the Earnest Money Payment.

55. The Debtor, with willful and malicious intent, induced the Plaintiff to advance the Earnest Money Payment knowing he had no intention of satisfying its obligations under the Durum Contract, the Cedar Contract or the Earnest Money Release agreement.

56. The Debtor with willful and malicious intent, violated the terms, conditions and obligations under the Durum Contract, the Cedar Contract or the Earnest Money Release agreement.

57. The Debtor, with willful and malicious intent, induced the Plaintiffs to advance the Earnest Money Payment knowing that the representations he made to the Plaintiffs were false and misleading; that he had no intention of honoring the obligations under the Durum Contract, the Cedar Contract or the Earnest Money Release agreement; and that the Earnest Money Payment would not be returned to the Debtor.

58. The Debtor, with willful and malicious intent, induced the Plaintiff to advance the Earnest Money Payment despite knowing that the Debtor could not and/or would not perform his obligations and promises to the Plaintiffs.

59. The Debtor, with willful and malicious intent, induced the Plaintiffs to advance the Earnest Money Payment despite knowing the Earnest Money Payment was to be held in trust but the Debtor did not intend to and did not hold the Earnest Money Payment in trust and instead planned to and did use the Earnest Money Payment for his personal benefit.

60. The Debtor's conduct was willful and malicious causing injury to Plaintiff.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Debtor in the amount equal to the Earnest Money Payment and deny a discharge of the claim equal to Earnest Money Payment plus accruing interest and fees and costs, or such other amounts as determined at trial, plus attorney's fees and costs, pursuant to 11 U.S.C. § 523(a)(6).

## COUNT IV:
## CIVIL THEFT

61. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

62. Defendant committed civil theft under C.R.S. § 18-4-405 by knowingly obtaining, retaining, and/or exercising control over the Earnest Money Payment by deceptive means.

63. The Defendant intended to permanently deprive the Plaintiffs of the use or benefit of the Earnest Money Payment.

64. The Defendant knowingly acted, used and/or concealed the Earnest Money Payment in such a manner as to deprive the Plaintiffs permanently of their use or benefit of the Earnest Money Payment.

65. The Defendant has knowingly retained the Earnest Money Payment well beyond the agreed-upon time for its return and repayment to the Plaintiffs.

66. Defendant's actions and omissions in connection with the Earnest Money Payment constitute civil theft.

67. As a result of Defendants civil theft, Plaintiffs are entitled to recover treble the amount of their damages plus attorney fees and costs.

68. Claims for civil theft are non-dischargeable under 11 U.S.C § 523(a)(4) and (6).

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Debtor in the amount equal to the Earnest Money Payment and deny a discharge of the claim equal to Earnest Money Payment plus treble damages and accruing interest and fees and costs, or such other amounts as determined at trial, plus attorney's fees and costs.

DATED: April 9, 2021                    Respectfully submitted,

By: _/s/ Aaron A. Garber_
Aaron A. Garber #36099
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120
Telephone: (303) 296-1999
Fax: (303) 296-7600
Email: agarber@wgwc-law.com